IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. _____ |
| v. | ) | |
| | ) | |
| ALEJANDRO MAYORKAS, in his official | ) | |
| capacity as Secretary of Homeland Security; | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOMELAND SECURITY; PATRICK | ) | |
| LECHLEITNER, in his official capacity as | ) | |
| Deputy Director and Senior Official | ) | |
| Performing the Duties of the Director of | ) | |
| United States Immigration and Customs | ) | |
| Enforcement; and UNITED STATES | ) | |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     Plaintiff the State of Tennessee brings this action against Defendants Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security; the U.S. Department of Homeland Security ("DHS"); U.S. Immigration and Customs Enforcement ("ICE"); and ICE senior official Patrick Lechleitner to compel compliance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  For more than seven months now, Defendants have effectively ignored Tennessee's requests for information about federal authorities' publicized plan to transport adult noncitizen detainees—many with dangerous criminal histories—from Louisiana detention facilities and release them into Tennessee.  Faced with Defendants' refusal to follow FOIA, the State now asks this Court for declaratory and injunctive relief to obtain the records about ICE's detainee-release plan that Defendants are unlawfully withholding.

1

## INTRODUCTION

2.      The federal government estimates that well over 100,000 noncitizens unlawfully enter the United States each month. Though some illegal immigrants face federal detention, many others cross the border undetected. Still thousands more have made their way into the States under U.S. immigration authorities' recent policy of releasing entire categories of detainees and asylum-seekers on parole pending their immigration proceedings.

3.      As a result, the States bear significant costs associated with the massive inflow of illegal immigration. New arrivals of noncitizens greatly strain state and local resources in areas ranging from public education, to healthcare, to infrastructure and housing—a phenomenon prompting ever-growing concern from local officials.[1] Public safety risks also abound, as many illegal immigrants entering communities have backgrounds of committing violent, gang-related, or drug-related offenses.[2]

4.      It is therefore imperative that States receive transparent and accurate information regarding the federal government's immigration enforcement activities and its plans to release illegal immigrants unfettered into the States. Only with such information can the States vindicate their interests by challenging unlawful federal immigration policies and preparing for the grave public-safety and public-resource concerns that result from improper policing of the border.

5.      This case involves the unlawful failure of Defendants—federal immigration officials and agencies—to provide Tennessee with critical immigration information affecting the State's interests. In late 2022, it came to light that ICE planned to transport potentially thousands

---

[1] *See, e.g.*, Jeff Coltin, *Adams: Cost of Migrants 'Will Destroy New York City'*, Politico (Sept. 7, 2023), https://perma.cc/9RKV-DZQY ("All of us are going to be impacted by this…. The city we knew, we're about to lose…. Every service in this city is going to be impacted." (quoting New York City Mayor Eric Adams)); City of Chicago, Office of the Mayor, *Mayor Lightfoot Issues Declaration of Emergency in Response to Influx of New Arrivals* (May 9, 2023), https://perma.cc/88D3-L9K9.

[2] *See* U.S. Customs and Border Protection, *Criminal Noncitizen Statistics Fiscal Year 2023* (Aug. 16, 2023), https://perma.cc/PK8X-6XHC.

of "single adult" noncitizen detainees from ICE detention facilities in Louisiana and release them into Tennessee pending final removal proceedings ("detainee-release plan"). ICE officials, the State learned, had been cooperating with Tennessee-based immigration-rights groups and employees of the Metropolitan Government of Nashville & Davidson County ("Metro Nashville") to carry out the detainee-release plan.

6. Tennessee has since sought and failed to obtain information about ICE's detainee-release plan, including by making and renewing FOIA requests for Defendants' records and third-party communications with immigration-rights groups and local leaders. Records obtained directly from Metro Nashville confirm that Defendants possess records responsive to Tennessee's requests. FOIA required Defendants to determine within 20 days whether they would comply with such a request, with an opportunity to seek a brief extension only in exceptional circumstances.

7. Yet, to date, approximately *seven months* since Tennessee's first FOIA request, Defendants have not produced a single document, nor have they claimed the withholding of any document pursuant to any statutory FOIA exemption. Tennessee's requests for the important immigration-related information it seeks have been effectively ignored.

8. Faced with silence, Tennessee pursued administrative appeals of what it interpreted to be Defendants' constructive denial of its requests. Still, Defendants produced nothing.

9. In light of Defendants' abdication of their FOIA duties, and after exhausting all options short of litigation, Tennessee now requests that this Court require Defendants to comply with FOIA by promptly producing all responsive, non-exempt records in their possession, custody, or control.

## PARTIES

10.     Plaintiff State of Tennessee is a sovereign State.  Attorney General and Reporter Jonathan Skrmetti is responsible for, *inter alia*, prosecuting or defending in the federal courts all suits, civil or criminal, in which the State of Tennessee is a party.  Tenn. Code Ann. § 8-6-110.

11.     Defendant Alejandro Mayorkas is the United States Secretary of Homeland Security and is responsible for the operation of DHS.  He is sued in his official capacity.

12.     Defendant DHS is an agency of the United States, as that term is defined at 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702.  DHS is the federal agency principally responsible for immigration enforcement and has possession, custody, and control of the records Tennessee seeks through its operational component, ICE.

13.     Defendant Patrick J. Lechleitner is the Deputy Director and Senior Official Performing the Duties of the Director of ICE.  He is sued in his official capacity.

14.     Defendant ICE is an operational component of DHS that manages the immigration enforcement process, including identification and arrest, domestic transportation, detention, bond management, and supervised release.  *See* U.S. Immigration and Customs Enforcement, https://www.ice.gov/about-ice.  ICE has possession, custody, and control of the agency records Tennessee seeks.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 1361, and 2201-02.

16.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).  For venue purposes, the State of Tennessee is considered a resident of the Middle District of Tennessee and of the Columbia Division of the Middle District of Tennessee.

## LEGAL STANDARD

17.    FOIA requires a federal administrative agency to promptly make available non-exempt agency records in response to a request that (a) "reasonably describes such records," and (b) "is made in accordance with published rules stating the time, place, fees, … and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A).

18.    FOIA requires federal agencies to respond to a valid request "within 20 days … after the receipt of any such request," notifying the requestor immediately of its "determination" as to whether or not to comply with the request, the reasons therefor, and the right to appeal any adverse determination to the head of the agency.  5 U.S.C. § 552(a)(6)(A)(i).

19.    Although FOIA provides that "unusual circumstances" may permit an agency to request an additional 10 working days to respond to the request, the agency must provide "timely written notice" of its extension that "set[s] forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched."  5 U.S.C. §§ 552(a)(4)(A)(viii)(II)(aa), (a)(6)(B)(i); 28 C.F.R. § 16.5(c).  If the agency determines it will require more than an additional 10 working days to respond to the request, "the component shall, as described by the FOIA, provide the requestor with an opportunity to modify the request or arrange an alternative time period for processing."  28 C.F.R. § 16.5(c).

20.    FOIA vests courts with jurisdiction "to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  If the federal agency does not respond to a FOIA request by the statutory time limits, the requester is deemed to have exhausted administrative remedies and may pursue judicial review.  *Id.* § 552(a)(6)(C)(i).

21.    FOIA permits courts to assess "reasonable attorney fees and other litigation costs reasonably incurred in any case… in which the complainant has substantially prevailed."  *Id.* § 552(a)(4)(E).

## FACTUAL BACKGROUND

**A. ICE's Planned Release of Migrant Detainees into Tennessee**

22.     In mid-December 2022, ICE advised the State of Tennessee that it was planning to transport potentially thousands of "single adult" noncitizen detainees from its detention facilities in Louisiana and release them on parole into Tennessee pending final removal proceedings.

23.     ICE utilizes nine detention facilities in Louisiana that collectively house more than 4,000 adult noncitizen detainees, mostly males. *See* ICE Detention Statistics (Facilities FY23), https://tinyurl.com/37tps688 (last accessed October 2, 2023).

24.     Recent detention data published by ICE Enforcement and Removal Operations indicates that nearly one in five of the noncitizen detainees currently housed at ICE facilities in Louisiana are convicted criminals. *Id.* Many of those detainees have the most severe threat levels that ICE can assign. *Id.*

25.     ICE's planned detainee-release plan appears to have been motivated, at least in part, by the anticipated surge of migrant encounters at the Southern border following the federal government's termination of the Centers for Disease Control and Prevention's ("CDC") Title 42 public health order.  The federal government initially had planned to end reliance on Title 42 on December 21, 2022.

26.     On December 13, 2022, Brian Acuna, who serves as the Deputy Field Office Director for ICE's New Orleans Field Office, requested a meeting with Tennessee officials to discuss the release of migrants in ICE custody from facilities in Louisiana.  Brian Acuna advised that ICE sometimes releases noncitizens to community-based groups or other non-governmental organizations ("NGOs").

27.     Upon information and belief, ICE employees had *already* been organizing ICE's planned release of noncitizen detainees into Tennessee with both special-interest groups and employees of Metro Nashville.  One NGO that has coordinated with ICE regarding the release of noncitizen detainees into Tennessee is the Tennessee Immigrant Refugee Rights Coalition ("TIRRC"), a 501(c)(3) organization funded in part by Metro Nashville[3] whose work is "centered on building the civic engagement and real political power of immigrants and refugees."  *See* TIRRC, *Building Political Power*, https://perma.cc/8MZ7-4W4W.

28.     TIRRC recently launched, financially supports, and shares office space with TIRRC Votes, a 501(c)(4) organization that directly endorses candidates for public office and whose mission is to "build political power for immigrant and refugee communities and to create a pro-immigrant majority in the state."  *See* TIRRC Votes, https://perma.cc/GV63-BBLW.

29.     Defendants solicited assistance from TIRRC, Metro Nashville, and other community groups to help them plan and implement the detainee-release program.

30.     The State of Tennessee obtained a partial view of those efforts after Metro Nashville, unlike Defendants, provided Tennessee with some electronic records of communications in its possession.  Many of those records also would be responsive to Tennessee's FOIA Requests, which further demonstrates that Defendants have failed to comply with their statutory obligations.

31.     For instance, records now in Tennessee's possession show that on December 6, 2022, Brian Acuna of ICE emailed Lisa Sherman Luna of TIRRC "following up on whether [TIRRC] and or partner(s) could be interested in supporting released noncitizens in line with what the Department mentioned to you the other evening."  Acuna asserted that "[o]ur Assistant Field

---

[3] *See* TIRRC, *TIRCC Celebrates Historic Investment in Immigrant Communities in Davidson County*, https://perma.cc/U95R-DDXL.

7

Office Director for your area, Catherine Chargualaf[,] will be able to have her staff set up more detailed information sharing in preparation.  And our Community Relations Officer from the ICE Office of Public Engagement, Joshua Jack[,] will be able to assist in maintaining dialogues."

32.     Later on December 6, 2022, Chargualaf confirmed by email that she and Acuna would be available for a meeting in Nashville on December 7, 2022.  Luna responded, "Ok great! Someone from the Nashville Mayor's office will be joining me as well—confirming who it will be."

33.     On December 7, 2022, Luna thanked ICE officials by email "for the meeting time this am and answering some crucial questions for us."  ICE had failed to notify Tennessee of its plans, so Luna and TIRRC, upon information and belief, were the first to suggest that "this conversation should be had with the Tennessee Governor."  Luna included Metro Nashville employees Mohamed Hassan and Tom Jurkovich on the email.

34.     On the afternoon of December 19, 2022, ICE officials met with Governor Bill Lee's Office and revealed that ICE intended to transport busloads of single adult detainees from ICE facilities in Louisiana to Tennessee for release.[4]

35.     The Governor's Office quickly informed the Tennessee public about ICE's planned release of noncitizen detainees into Tennessee, and ICE's detainee-release plan immediately garnered widespread media attention.[5]

---

[4] *See* Office of the Governor, *Gov. Lee, Senators Blackburn and Hagerty Demand Biden Administration Reverse Plan to Release ICE Detainees in Tennessee* (Dec. 20, 2022), https://perma.cc/7YFE-U5F7.

[5] *See, e.g.,* Kelly Laco, *Blackburn, Hagerty Press ICE Director for Answers on Illegal Migrants Being Bussed to Tennessee*, Fox News (Dec. 20, 2022), https://perma.cc/BE3K-WQH4; Kelly Broderick, *Governor Bill Lee Says ICE Is Planning to Release 'Unspecified' Number of Detainees into Tennessee*, News Channel 5 Nashville (Dec. 20, 2022), https://perma.cc/D2PR-D46Y; Mariah Timms, *Feds Plan to Transport Some Migrants to Tennessee as Title 42 Ends*, Tennessean (Dec. 20, 2022), https://perma.cc/Q9JJ-RT4T.

36.     On December 20, 2022, TIRRC publicly confirmed the detainee-release plan resulted from "DHS listen[ing] to what local organizations and communities have been demanding."

37.     After Tennessee and other States attempted to intervene in litigation challenging the Title 42 policy and requested relief from the Supreme Court, Chief Justice Roberts on December 19, 2022, issued an administrative stay of a lower court order that would have allowed the Title 42 policy to expire. *Arizona v. Mayorkas*, No. 22A544, 2022 WL 17750015 (Dec. 19, 2022). The administrative stay thus required the policy to remain in effect. On December 27, 2022, the full Supreme Court extended the stay until after it had an opportunity to consider the States' appeal. *Arizona v. Mayorkas*, 143 S.Ct. 478 (2022).

38.     The Supreme Court's decision to temporarily block the expiration of the Title 42 policy appears to have delayed Defendants' implementation of the planned detainee-release plan. In another email Tennessee obtained from Metro Nashville, Luna of TIRRC explained to Ben Eagles of Metro Nashville at 10:47 PM on December 19, 2022—shortly after Chief Justice Roberts issued the administrative stay—that "we have more time based on new info so no rush on this right now."

39.     Metro Nashville and TIRRC continued coordinating to help carry out ICE's planned detainee-release plan in anticipation of the eventual termination of the Title 42 policy. For example, on December 27, 2022, Eagles texted Luna, asking: "How much space does TIRRC have available and what are you planning to offer people? And what other nonprofits is TIRRC already working with? Have you mapped out how many people you can take/serve each week?"

40. Concern about DHS and ICE reinitiating the planned detainee-release plan has grown after the federal government stopped relying on Title 42 on May 11, 2023, resulting in the Supreme Court dismissing the Title 42 appeal. *See Arizona v. Mayorkas*, 143 S. Ct. 1312 (2023).

41. Federal immigration law generally *mandates* detention of noncitizens pending their immigration proceedings. *E.g.*, 8 U.S.C. §§ 1225 & 1182(d)(5)(A). Immigration officials are permitted by statute to release noncitizen detainees into the United States through parole only on "case-by-case bas[e]s" in situations presenting "urgent humanitarian reasons or significant public benefit." *Id.* § 1182(d)(5)(A).

42. A conscious decision by Defendants to release noncitizen detainees into Tennessee through mass parole would therefore constitute an express failure to enforce our country's federal immigration laws and an abdication of Defendants' statutory responsibilities. *Cf. Florida v. United States*, No. 3:21-cv-1066-TKW-ZCB, 2023 WL 2399883, *24-28 (N.D. Fla. Mar. 8, 2023) (vacating Parole+ATD Policy as unlawful).

43. Sure enough, upon the end of the federal government's reliance on Title 42, the U.S. District Court for the Northern District of Florida had to issue a temporary restraining order and then a preliminary injunction prohibiting DHS from implementing a parole-with-conditions policy. *Florida v. Mayorkas*, No. 3:23-cv-9962-TKW-ZCB, 2023 WL 3398099 (N.D. Fla. May 11, 2023) (temporary restraining order); *id.*, 2023 WL 3567851 (N.D. Fla. May 16, 2023) (preliminary injunction); *see also Florida v. United States*, Nos. 23-11528, 23-11644, 2023 WL 3813774 (11th Cir. June 5, 2023) (denying federal government's motion for stay pending appeal).

**B. Tennessee's Requests for Records About ICE's Detainee-Release Plans**

44.     Defendants' detainee-release plans have attracted widespread media interest due to the public's and the States' interest in the enforcement of our nation's immigration laws.[6]

45.     The Tennessee public has an interest in learning about the detainees ICE was planning to release into Tennessee and in knowing whether ICE still plans to release single adult detainees into this State.  The State of Tennessee likewise has an interest in protecting the safety of Tennesseans and in ensuring that DHS and ICE are complying with federal immigration law.

46.     Accordingly, the State of Tennessee, acting through the Office of the Attorney General and Reporter, submitted a series of FOIA Requests to ICE in early 2023.  Through these requests, Tennessee sought documents related to the planned transport and release into Tennessee of noncitizen detainees held in ICE detention facilities.

(i)     Tennessee's First FOIA Request in February 2023 and Administrative Appeal

47.     On February 23, 2023, the Tennessee Attorney General's Office submitted a FOIA request ("First Request") to ICE via the agency's online FOIA SecureRelease Portal.  *See* Ex. 1.

48.     Tennessee sought all records concerning the completed or planned release of single adult ICE detainees in Tennessee, including information regarding the number of such detainees, the explanation or justification for their release, and their criminal histories and ICE threat levels.  *Id.* at 1-2.

49.     The request also asked ICE to produce all electronic and written communications between DHS and/or ICE and employees of Metro Nashville and various immigration-related groups involved in the detainee-release planning.  *Id.* at 2-3.  Such federal officials included Brian Acuna, employed by ICE as Deputy Field Office Director for the New Orleans Field Office, Joshua

---

[6] *See, e.g.*, Julia Ainsley, *Border Agents Released More than 6,400 Migrants Without Court Dates Before Being Stopped by Court Order*, NBC News (May 16, 2023), https://perma.cc/DPY5-FXPF.

Jack, employed by ICE as Community Relations Officer for the New Orleans Field Office, and Catherine Chargualaf, employed by ICE as Assistant Field Office Director in Nashville. *Id.*

50. Tennessee's First Request sought all responsive records in the possession of ICE for the period of November 1, 2022, through the date the Request was received. *Id.* at 1. Tennessee further sought expedited processing of its First Request because there was an urgent need to inform the public regarding ICE's detainee-release plan, and the information sought relates to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. *See* 6 C.F.R. § 5.5(e). Tennessee advised that in order to accelerate ICE's release of responsive records, it "welcome[d] production on an agreed rolling basis." Ex. 1, at 4.

51. On March 3, 2023, ICE acknowledged via email that it had received Tennessee's First Request on February 23, 2023, and had assigned it case number 2023-ICFO-14971. ICE also "invoke[d] a 10-day extension" of its 20-day response deadline pursuant to 5 U.S.C. § 552(a)(6)(B) based on what it described as "the increasing number of FOIA requests" it had received and the need for a "thorough and wide-ranging search" for responsive documents. ICE further advised, without explanation, that Tennessee would be charged for the production of any records as a "commercial requester"—a mistake ICE later corrected.

52. Defendants never responded to Tennessee's request for expedited processing, in violation of the 10-day deadline for doing so under 6 C.F.R. § 5.5(e)(4). Defendants' failure to respond constitutes a constructive denial of the same.

53. On April 11, 2023, after ICE's extended deadline for responding to the First Request had expired, Tennessee's counsel emailed ICE requesting an update as to when the agency planned to comply. Receiving no response, the same counsel followed up with ICE by email on

April 13, 2023, again seeking compliance with the First Request and advising that Tennessee was "still open to discussing a timetable for ICE to disclose different categories of documents."

54.    Instead of complying with its obligations under FOIA, ICE sent correspondence to Tennessee's counsel on April 19, 2023, stating: "This request is currently pending the search for responsive documents."

55.    Defendants have never responded to the substance of the First Request, as required by 5 U.S.C. §§ 552(a)(3)(A) and 552(a)(6)(A).

56.    Defendants' failure to respond to the First Request within FOIA's statutory time limits constitutes a constructive denial of the same.

57.    Because Defendants failed to comply with the applicable time-limit provisions of FOIA, Tennessee has constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

58.    Nonetheless, Tennessee also formally exhausted the administrative review process as it pertains to Defendants' constructive denial of its First Request.

59.    On May 7, 2023, Tennessee filed an administrative appeal of Defendants' constructive denial of its First Request with the Office of the Principal Legal Advisor in ICE's Government Information Law Division, pursuant to 5 U.S.C. § 552(a)(6)(A).  ICE acknowledged its receipt of the administrative appeal the following day and assigned it appeal number 2023-ICAP-00292.

60.    On May 8, 2023, Tennessee's counsel emailed ICE to request expedited processing of the administrative appeal pursuant to 6 C.F.R. § 5.5(e)(1), reiterating that the First Request "involves a matter of widespread and exceptional media interest in which there exist possible questions about the federal government's integrity which affect public confidence."

61.     After receiving no response, on May 11, 2023, Tennessee filed a formal request for expedited processing of its administrative appeal.  Tennessee noted the issue had "become even more urgent because <u>today</u> the Department will stop relying on Title 42," and DHS was "expecting … a surge" in illegal immigration with "the end of Title 42."  *Cf.* DHS, *Secretary Mayorkas & U.S. Customs & Border Protection Leadership Remarks at a Press Conference at Camp Monument Brownsville, TX* (May 5, 2023), https://perma.cc/4MHW-FSU3.

62.     Defendants did not respond to the request for expedited processing of the administrative appeal within 10 working days, in violation of 6 C.F.R. § 5.5(e)(4).

63.     On or about June 7, 2023, ICE sent correspondence affirming the constructive denial of Tennessee's original request for expedited processing of its First FOIA Request.  ICE asserted that although media articles indicate "the boarder [sic] crisis is a matter of widespread media interest," Tennessee had "not demonstrated there exists possible questions about the government's integrity which would affect public confidence."  ICE remanded Tennessee's appeal to the ICE FOIA Office "for processing, including tasking to the appropriate agency/office(s) to obtain any responsive documents, if they exist."

64.     To this date—approximately seven months since Tennessee filed its First Request—Defendants have made no determination regarding the substance of the First Request, have not produced a single document in response to the First Request, and have not claimed that any responsive records are being withheld pursuant to any statutory exemption.  The current "Status" of the First Request on the FOIA SecureRelease Portal reads "Searching for Records."

65.     Defendants have neither met any of their statutory response deadlines in relation to the First Request nor indicated whether or when they will comply with the same.

66. Each passing day only deepens Defendants' breach of their statutory requirements under FOIA to respond to Tennessee's First Request.

(ii)     Tennessee's Second FOIA Request in May 2023 and Administrative Appeal

67. On May 11, 2023, Tennessee submitted another FOIA request ("Second Request") to ICE seeking the same information sought in its First Request but for the intervening time period of February 24, 2023, through the date the Second Request was received. *See* Ex. 2.

68. As before, Tennessee sought expedited processing of its Second Request pursuant to 6 C.F.R. § 5.5(e), reiterating that ICE's release or planned release of noncitizen detainees into Tennessee was a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." *Id*. at 4-5. And Tennessee again advised that in order to accelerate ICE's release of responsive records, it "welcome[d] production on an agreed rolling basis." *Id*. at 6.

69. On May 16, 2023, ICE denied Tennessee's request for expedited processing. ICE failed to address the asserted basis for expedited processing—6 C.F.R. § 5.5(e)(1)(iv)—and instead justified its denial by citing two unrelated provisions. ICE also invoked a 10-day extension of its response deadline "[d]ue to the increasing number of FOIA requests received by this office" and due to the need for a "thorough and wide-ranging search" for responsive documents.

70. Tennessee appealed ICE's denial of expedited processing later the same day. ICE acknowledged receipt of the appeal and assigned it appeal number 2023-ICAP-00301.

71. On May 17, 2023, Tennessee sought expedited processing of its appeal in 2023-ICAP-00301. But Defendants did not respond within the 10-day deadline imposed by 6 C.F.R. § 5.5(e)(4), which constitutes a constructive denial of the same.

72.     Defendants never responded to the substance of Tennessee's Second Request, as required by 5 U.S.C. §§ 552(a)(3)(A) and 552(a)(6)(A).

73.     Defendants' failure to respond to the Second Request within FOIA's statutory time limits constitutes a constructive denial of the same.

74.     Because Defendants failed to comply with the applicable time-limit provisions of FOIA, Tennessee has constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

75.     Nonetheless, Tennessee also formally exhausted the administrative review process as it pertains to Defendants' constructive denial of its Second Request.

76.     On July 5, 2023—after ICE's statutory deadline for responding to the Second FOIA Request had expired—Tennessee filed an administrative appeal of Defendants' constructive denial of its Second Request with the Office of the Principal Legal Advisor in ICE's Government Information Law Division, pursuant to 5 U.S.C. § 552(a)(6)(A).  Tennessee requested expedited processing of its administrative appeal, noting that its Second Request and subsequent appeal involved "a matter of widespread and exceptional media interest in which there exist possible questions about the federal government's integrity which affect public confidence."  *See* 6 C.F.R. § 5.5(e)(1)(iv).

77.     On July 13, 2023, ICE sent Tennessee untimely correspondence affirming its constructive denial of expedited processing of Tennessee's Second Request.  ICE further admitted it had never responded to the Second Request in substance and remanded the matter to its FOIA Office for further processing.

78.     To date—more than four months since Tennessee filed its Second Request— Defendants have made no determination regarding the substance of the Second Request, have not

produced a single document in response to the Second Request, and have not claimed that any responsive records are being withheld pursuant to any statutory exemption. The current "Status" of the Second Request on the FOIA SecureRelease Portal reads "Searching for Records."

79. Defendants have neither met any of their statutory response deadlines in relation to the Second Request nor indicated whether or when they will comply with the same.

80. Each passing day only deepens Defendants' breach of their statutory requirements under FOIA to respond to Tennessee's Second Request.

## CLAIMS FOR RELIEF

### COUNT I
### Failure to Comply with FOIA (First Request)
### 5 U.S.C. § 552

81. Plaintiff the State of Tennessee incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

82. On February 23, 2023, Tennessee properly submitted its First Request for records within the Defendants' possession, custody, and control.

83. FOIA required ICE to provide a final determination within 20 working days of receiving the First Request. 5 U.S.C. § 552(a)(6)(A)(i). ICE was permitted to extend this 20-day deadline in the event of "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii), for a maximum of 10 additional working days, by providing written notice to the requester. *Id.* § 552(a)(6)(B)(i).

84. Although ICE invoked a 10-day extension of its deadline to respond, ICE still failed to make or communicate a final determination within 30 working days of receiving and logging Tennessee's First Request. *See id.* § 552(a)(6)(B)(i).

85. ICE thus failed to timely make and communicate a determination regarding Tennessee's First Request, in violation of FOIA. *See id.* § 552(a)(6).

86. More than seven months have now passed since the First Request was received and logged by ICE. Yet Defendants still have made no determination regarding the substance of the First Request, have not produced a single document in response to the First Request, and have not claimed that any responsive records are being withheld pursuant to any statutory FOIA exemption.

87. Defendants are wrongfully withholding non-exempt agency records sought by the First Request.

88. Defendants' failure to produce all requested records or claim applicable exemptions violates FOIA. *Id.* § 552(a)(3)(A).

89. Tennessee has exhausted all available administrative remedies as it pertains to the First Request.

90. Tennessee is entitled to an order compelling Defendants to promptly produce all records responsive to the First Request. To the extent Defendants wish to invoke any applicable FOIA exemption, Tennessee is entitled to an order compelling Defendants to produce sufficiently detailed indexes justifying the withholding of responsive records.

## COUNT II
### Failure to Comply with FOIA (Second Request)
### 5 U.S.C. § 552

91. Plaintiff the State of Tennessee incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

92. On May 11, 2023, Tennessee properly submitted its Second Request for records within the Defendants' possession, custody, and control.

93. FOIA required ICE to provide a final determination within 20 working days of receiving the Second Request. 5 U.S.C. § 552(a)(6)(A)(i). ICE was permitted to extend this 20-day deadline in the event of "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii),

for a maximum of 10 additional working days, by providing written notice to the requester.  *Id.* § 552(a)(6)(B)(i).

94.     Although ICE invoked a 10-day extension of its deadline to respond, ICE still failed to make or communicate a final determination within 30 working days of receiving and logging Tennessee's Second FOIA Request.  *See id.* § 552(a)(6)(B)(i).

95.     ICE thus failed to timely make and communicate a determination regarding Tennessee's Second Request, in violation of FOIA.  *See id.* § 552(a)(6).

96.     More than four months have now passed since the Second Request was received and logged by ICE.  Yet Defendants have made no determination regarding the substance of the Second Request, have not produced a single document in response to the Second Request, and have not claimed that any responsive records are being withheld pursuant to any statutory FOIA exemption.

97.     Defendants are wrongfully withholding non-exempt agency records sought by the Second Request.

98.     Defendants' failure to produce all requested records or claim applicable exemptions violates FOIA.  *Id.* § 552(a)(3)(A).

99.     Tennessee has exhausted all available administrative remedies as it pertains to the Second Request.

100.    Tennessee is entitled to an order compelling Defendants to promptly produce all records responsive to the Second Request.  To the extent Defendants wish to invoke any applicable FOIA exemption, Tennessee is entitled to an order compelling Defendants to produce sufficiently detailed indexes justifying the withholding of responsive records.

## **RELIEF REQUESTED**

Accordingly, Plaintiff the State of Tennessee respectfully requests that the Court:

(a)     Expedite the proceedings in this action;

(b)     Declare that Defendants failed to make a timely determination regarding Tennessee's First and Second Records Requests, in violation of FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), (a)(6)(B), (a)(6)(E)(iii);

(c)     Declare that Defendants failed to promptly provide records responsive to Tennessee's records requests, in violation of FOIA, 5 U.S.C. § 552(a)(3);

(d)     Order Defendants to immediately conduct a reasonable search for all responsive records and demonstrate that it employed search methods reasonably calculated to uncover all records responsive to Tennessee's records requests, as required by FOIA, 5 U.S.C. § 552(a)(3)(C);

(e)     Order Defendants to preserve all records potentially responsive to Tennessee's records requests;

(f)     Order Defendants to immediately provide a determination regarding Tennessee's records requests, as required by FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), (a)(6)(B), and to produce a *Vaughn* index of any responsive records withheld under claim of exemption, *see Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145-46 (D.C. Cir. 2006);

(g)     Order Defendants to promptly disclose to Tennessee, in their entirety, unredacted versions of all records responsive to the First and Second Requests that are not specifically exempt from disclosure, as required by FOIA, 5 U.S.C. § 552(a)(3);

(h)     Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Tennessee's First and Second Requests;

(i)     Maintain jurisdiction over this action to ensure that ICE produces all responsive, non-exempt records to Tennessee and that any non-exempt portions of responsive records are not improperly withheld;

(j)     Award reasonable attorneys' fees and allowable costs, including those available under 5 U.S.C. § 552(a)(4)(E); and

(k)     Grant Tennessee such other and further relief as the Court deems just and proper.


Dated: October 2, 2023.                    Respectfully submitted,

                                           JONATHAN SKRMETTI,
                                           Attorney General and Reporter

                                           */s/ Steven J. Griffin*
                                           STEVEN J. GRIFFIN (BPR# 40708)
                                           Senior Counsel for Strategic Litigation &
                                           Assistant Solicitor General
                                           WHITNEY D. HERMANDORFER
                                           (BPR# 041054)
                                           Director of Strategic Litigation Unit &
                                           Assistant Solicitor General
                                           Office of the Tennessee Attorney General
                                           P.O. Box 20207
                                           Nashville, Tennessee 3720
                                           (615) 741-9598
                                           steven.griffin@ag.tn.gov
                                           whitney.hermandorfer@ag.tn.gov

                                           *Counsel for Plaintiff*